UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRIAN A. PERRI, :
: 
      Petitioner, : Civ. No. 20-13711 (RBK)
:
v. :
:
WARDEN OF FCI FORT DIX, : **OPINION**
:
      Respondent. :
:

**ROBERT B. KUGLER, U.S.D.J.**

    Before the Court is Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Respondent filed an Answer opposing relief. (ECF No. 6.) Petitioner filed two motions to amend that the Court will grant and construe as a Reply.[1] (ECF Nos. 11, 14.) The Court appointed counsel for Petitioner, and counsel submitted a supplemental brief at the Court's request. (ECF No. 36.) Respondent filed a supplemental brief in opposition. (ECF No. 38.) For the reasons discussed below, the Court will dismiss Petitioner's request to modify sentence as moot and dismiss the remainder of the Petition for lack of jurisdiction. The Court will alternatively deny Petitioner's abuse of discretion-based home confinement claim on the merits.

    I.    **BACKGROUND**

    This case arises from Petitioner's incarceration at Federal Correctional Institution Fort Dix. By way of background, on June 27, 2016, the District Court for the Eastern District of Pennsylvania sentenced Petitioner to three sentences of 120 months in prison for one count of possession of child pornography and two counts of transportation of child pornography, to run

---

[1] Petitioner's motions to amend primarily seek to provide additional evidence and seek to dispute the contentions in Respondent's Answer. (ECF Nos. 11, 14.) Petitioner did not otherwise file a reply, despite requesting and receiving an extension of time to file one. (ECF No. 10.)

concurrently, followed by fifteen years of supervised release. (*United States v. Perri*, Crim. No. 15-486, ECF No. 41 (E.D.P.A.)).  In September of 2019, Petitioner's sentencing court denied his motion for home confinement for lack of jurisdiction, and in October of 2020, denied Petitioner's motion for compassionate release, finding that he still posed a danger to other persons or to the community. (*Perri*, Crim. No. 15-486, ECF No. 60 (E.D.P.A.)); *United States v. Perri*, No. 15-486, 2020 WL 6324384, at *3 (E.D. Pa. Oct. 28, 2020).  The sentencing court arrived at its conclusion based on Petitioner's "serious child pornography crimes," which involved the possession of "thousands of videos and hundreds of thousands of photos," at least one of which involved an infant, and many of which "were sadistic in nature and involved violence." *Perri*, 2020 WL 6324384, at *3.

According to Petitioner, Fort Dix houses him in unsafe conditions in light of the COVID-19 pandemic.  Petitioner contends that he is a vulnerable individual because he is over 60 years old and suffers from asthma, emphysema, diverticulitis, wasting, atrophy, chronic obstructive pulmonary disease, and has been identified "as being at high risk for a fatal outcome," by Fort Dix. (ECF No. 1, at 22).

As for the conditions at Fort Dix, Petitioner contends that the prison lacked adequate cleaning supplies and protective gear, and that staff had not properly implemented or enforced the Center for Disease Control's recommendations. (*Id*. at 13–18).  Petitioner also alleges that the structure of Fort Dix and how it houses its prisoners make social distancing impossible. (*Id*. at 13). Additionally, Petitioner contends that there is an outbreak of Legionnaire's disease at the facility. (*Id*. at 8.)

In response, Respondent extensively details the Bureau of Prisons' ("BOP") efforts to improve its facilities and prevent the spread of COVID-19 at Fort Dix.  (ECF No. 6, at 13–23).

Respondent also provided updated information on the conditions at Fort Dix. (*Id*. at 21–23.) With regard to Legionnaires' disease, the BOP offers evidence that "[n]o inmate at FCI Fort Dix has ever tested positive for Legionnaires' disease, nor are there any suspected or presumed cases of Legionnaires' disease among the inmate population." (*Id*. at 20 (citing ECF No. 6-2, ¶ 5).) Rather, a single staff member had tested positive for the disease. (ECF No. 6-2, ¶ 6.) After the positive test, the BOP immediately closed the building where the staff member had worked and found that a water filter in the medical records office "tested positive for extremely low levels of the bacteria that could cause Legionnaires' disease." (*Id*. ¶ 8.) While the filter tested positive, the faucet and the water produced from the faucet tested negative for bacteria related to Legionnaires' disease. (*Id*.) After Petitioner's initial filings, Petitioner contracted COVID-19 in January of 2021. (ECF No. 36, at 8.)

With regard to exhaustion, it initially appeared that Petitioner had failed to exhaust his administrative remedies as to any of his claims, and the parties strongly disputed the issue. After multiple Orders, however, Petitioner submitted evidence that appeared to show that he, at the very least, submitted an administrative remedy form at each level of appeal. (ECF No. 27.) Although the Court appointed counsel for the primary purpose of resolving that dispute of fact, the parties requested that the Court excuse exhaustion, and address the merits of Petitioner's claims. (ECF No. 32.) The Court has granted the parties' request. The Court held a conference on this matter in July of 2022, and the parties submitted supplemental briefing, (ECF Nos. 35, 38, 39.)

After that conference, and the now widespread availability of vaccines for COVID-19, Petitioner advised that he has refused the vaccine and alleges that he is "unable to receive the vaccine." (ECF No. 36, at 9.) The Court will address Petitioner's refusal in greater detail below. Despite refusing the vaccine, Petitioner argues that due to his vulnerability to COVID-19, he is

3

entitled to home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and alternatively, that the conditions of his confinement violate his rights under the Eighth Amendment. (ECF No. 1, at 6–8; ECF No. 36). In terms of relief, Petitioner seeks a transfer to home confinement, his immediate release, or to modify his sentences to run "from consecutively to concurrent[ly] to align with persons convicted of similar violation[s] in order to avoid sentencing disparities." (ECF No. 1, at 8.)

## II.  STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). A court addressing a petition for writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. A district court may "dismiss a petition summarily when it plainly appears from the face of the petition and any exhibits . . . that the petitioner is not entitled to relief." *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996).

If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir.

2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

### III. DISCUSSION

#### A. Request to Modify Sentence

As a preliminary matter, Petitioner appears to request to modify his sentences to run "from consecutively to concurrent[ly] to align with persons convicted of similar violation[s] in order to avoid sentencing disparities." (ECF No. 1, at 8.) The Petition offers no further elaboration. A review of Petitioner's criminal case reveals, however, that his three sentences are already running concurrently. (*Perri*, Crim. No. 15-486, ECF No. 41 (E.D.P.A.) ("The defendant is . . . to be imprisoned for a total term of: . . . (120) months on Counts One, Two and Three, all terms to be served concurrently with one another").) As Petitioner already possesses the relief he seeks in this request, the Court will dismiss this request as moot.

#### B. CARES Act Claims

Next, Petitioner contends that he is entitled to home confinement under the CARES Act.[2] In response, the Government contends that this Court lacks jurisdiction to grant Petitioner home confinement under the CARES Act, and in any event, the BOP's decision was not an abuse of discretion.

First, to the extent Petitioner seeks a direct order for home confinement, this Court "has no authority to issue such an order." *E.g.*, *United States v. Farlow*, No. 18-44, 2021 WL 1207485, at *4 (D.N.J. Mar. 30, 2021); *see also Hussain v. Thompson*, No. 21-1635, 2021 WL 5298898, at *3–4 (M.D. Pa. Nov. 15, 2021). Petitioner's request for home confinement falls under by 18 U.S.C.

---

[2] Petitioner had originally claimed that the decision to deny home confinement violated the Equal Protection Clause of the Constitution, but Petitioner has since withdrawn that claim. (ECF No. 36, at 3 n.3.)

5

§ 3624(c)(2), as amended by Section 12003(b)(2) of the CARES Act. *Farlow*, No. 18-44, 2021 WL 1207485, at *4. "The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP." *Id.* (citing *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *8 (D.N.J. July 27, 2020)); *Hussain*, 2021 WL 5298898, at *3–4 (citing cases); *see also* 18 U.S.C. § 3621(b) (stating that "a designation of a place of imprisonment under this subsection is not reviewable by any court"). Stated differently, petitioners cannot use "§ 2241 as an end-run around the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)) and the federal CARES Act, which vests in the Director of the Bureau of Prisons discretion to transfer an inmate to home confinement." *Olson v. Warden Schuylkill FCI*, No. 21-2436, 2022 WL 260060, at *2 (3d Cir. Jan. 27, 2022).

As a result, this Court lacks jurisdiction to issue an order for home confinement "under 18 U.S.C.§ 3624(c)(2) or its amendments under the CARES Act." *Farlow*, 2021 WL 1207485, at *4; *United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) (finding that the BOP has the sole authority to place a prisoner on home confinement); *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) (explaining that the decision "to transfer an inmate to home confinement is . . . within the exclusive discretion" of the BOP). Indeed, in her supplemental brief, counsel for Petitioner "conceded that the Court lacks the power to release Mr. Perri to home confinement under the CARES Act." (ECF No. 36, at 11.) Accordingly, the Court will dismiss Petitioner's request for home confinement under the CARES Act, for lack of jurisdiction.

As district courts are unable to grant home confinement under the CARES Act, many courts have held that the BOP's decisions on that issue are "not reviewable by any court." *E.g.*, *Reynolds v. Finley*, No. 21-1251, 2022 WL 36225, at *4–5 (M.D. Pa. Jan. 4, 2022) (holding that because the

CARES Act "does not provide federal courts with jurisdiction to direct or grant such relief . . . the decision regarding a federal inmate's place of confinement remains exclusively within the authority of the BOP, and the BOP's confinement location decision is 'not reviewable by any court.'"); *Adams v. Trate*, No. 20-237, 2020 WL 7337806, at *2 (W.D. Pa. Dec. 14, 2020) (citing cases); *United States v. Mathews*, No. 86-00197, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020).

Some district courts, however, have held that although a court "cannot review . . . [a] challenge to the BOP's decision under the CARES Act, the Court may assess 'whether the BOP abused its discretion.'" *Collins v. Bradley*, No. 20-2230, 2021 WL 4318027, at *4 (M.D. Pa. Sept. 23, 2021) (quoting *Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012), *aff'd sub nom. Collins v. Warden Canaan FPC*, No. 21-2878, 2022 WL 2752536 (3d Cir. July 14, 2022); *see also Holton v. Sage*, No. 22-0212, 2022 WL 3051838, at *2 (M.D. Pa. July 7, 2022) ("While the Court cannot address the BOP's decision to deny Petitioner his release under the CARES Act, the Court can act if the BOP abused its discretion.").

Petitioner urges this Court to accept the latter line of cases, which relies on *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990), and its progeny. (ECF No. 36, at 11); *United States v. Allen*, 124 F. App'x. 719, 721 (3d Cir. 2005). In *Keohane*, a state court had intended a petitioner's state sentence to run concurrently with his federal sentence, and he had spent a substantial amount of time in a state prison. *Keohane*, 921 F.2d at 477. The BOP, however, failed to designate the state prison as the place of confinement for his federal sentence. *Id*. As a result, the petitioner sought a *nunc pro tunc* designation to honor the state court's intent to have his sentences run concurrently, rather than consecutively. *Id*. Such a designation would have had the effect of dramatically reducing the petitioner's time in prison. *Id*.

7

*Keohane* and its progeny are distinguishable because they challenge a BOP decision which affects the duration of a prisoner's sentence. *Id*.; *Allen*, 124 F. App'x. at 721. This Court has jurisdiction under § 2241 to address claims which challenge "the fact or duration" of one's sentence and require one's sooner release. *E.g.*, *Leamer v. Fauver*, 288 F.3d 532, 540–41, 544 (3d Cir. 2002). In contrast, in the present case, the BOP's decision regarding home confinement under the CARES Act affects only *where* Petitioner will serve his sentence, rather than the fact or duration of his sentence.

Next, Petitioner relies on *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 243–44 (3d Cir. 2005), in which the Third Circuit held that courts have jurisdiction under § 2241 to challenge decisions regarding community correction center ("CCC") placement, as they affect the "execution" of a sentence, even though they do not directly affect the fact or duration of a sentence. *See also Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012). In arriving at that conclusion, the Third Circuit emphasized that transfer to residential reentry is more than a "garden variety prison transfer" and that serving a sentence in a CCC "is very different from carrying out a sentence in an ordinary penal institution." *Woodall*, 432 F.3d at 243. The Court also reasoned that residential reentry is "part of the phase of the corrections process focused on reintegrating an inmate into society." *Id*. at 243.

In *Cardona v. Bledsoe*, 681 F.3d 533, 536 (3d Cir. 2012), however, the Third Circuit appeared to narrow *Woodall*, finding that "Woodall was challenging the inconsistency between the sentencing court's recommendation and [the] BOP's refusal to abide by that recommendation," and therefore, involved the "execution of his sentence." The Court defined execution as "to 'put into effect' or 'carry out,'" and held that Woodall's claim was reviewable under § 2241 because it argued that the BOP was not "carrying out" his sentence in accordance with the sentencing court's

8

recommendation. *Id.* at 536 (quoting *Woodall*, 432 F.3d at 243). In contrast, in the present case, the BOP's decision on home confinement does not impact or conflict with his sentencing court's recommendations, as that court sentenced Petitioner prior to the COVID-19 pandemic. Accordingly, the Court finds that Petitioner has failed to meet his burden[3] to demonstrate that this Court has jurisdiction under § 2241 to review a decision denying home confinement under the CARES Act.

Nevertheless, assuming *arguendo* that this Court has jurisdiction to hear such a claim, the Court would alternatively deny the claim on the merits. *Collins*, 2022 WL 2752536, at *2 ("[A]ssuming that the absence of authority to *order* home confinement does not prohibit a court from *reviewing* in a § 2241 petition the BOP's denial of home confinement, we conclude that the District Court did not abuse its discretion." (emphasis in original)). In analyzing Petitioner's claim, this Court's "review is limited to whether the BOP abused its discretion." *Vasquez*, 684 F.3d at 434. "The test is not whether a reviewing court would weigh the factors differently. The writ may issue only where an error is fundamental and carries a serious potential for a miscarriage of justice." *Eccleston v. United States*, 390 F. App'x 62, 65 (3d Cir. 2010). As the Court cannot order home confinement, if the BOP abused its discretion, it would appear that the only relief available would be to order the BOP to reassess a petitioner's eligibility for home confinement.

Pursuant to the BOP memorandums in effect at that time, in assessing whether the BOP should grant home confinement, the BOP had to consider the "totality of the circumstances for each individual inmate," based on the following non-exhaustive list of factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with [CDC] guidelines;

---

[3] Petitioner "has the burden of persuasion to convince the court it has jurisdiction." *Goodchild v. Ortiz*, No. 21-790, 2021 WL 3914300, at *13 (D.N.J. Sept. 1, 2021) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment[;]

- The inmate's score under PATTERN,[4] with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety[;] and

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention.

(ECF No. 6, at 8–9, (quoting March 26, 2020, Attorney General Memorandum for the Director of BOP, *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf, at 1–2).) Additionally, on April 3, 2020, the BOP issued another memorandum emphasizing, among other things, for the BOP to make "individualized" determinations. April 3, 2020, Attorney General Memorandum for the Director of the BOP, *available at* https://www.justice.gov/file/1266661/download (last visited January 12, 2023).

The record in this case reflects that the BOP provided Petitioner with an individualized assessment. (ECF No. 6-4, ¶¶ 22–23.) The BOP found Petitioner ineligible for home confinement

---

[4] "Prisoner Assessment Tool Targeting Estimated Risk and Needs. According to the BOP's website, the risk and needs assessment system is used to determine the risk and needs of inmates in BOP custody. Specifically, the system determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk. The system also assesses each inmate and determines, to the extent practicable, the inmate's risk of violent or serious misconduct." *Defoggi v. United States*, No. 20-3889, 2020 WL 2899495, at *2 (D.N.J. June 3, 2020), *reconsideration denied*, 2020 WL 4013456 (D.N.J. July 16, 2020) (citation omitted) (internal quotation marks omitted).

because of his crimes of conviction, his PATTERN score of low rather than minimum, and his two high severity disciplinary infractions. (ECF No. 6-4, ¶¶ 22–23.)  With regard to his crimes of conviction, because the transportation and possession of child pornography qualified as a sex offense, the BOP "deemed him unqualified for CARES Act home confinement." (*Id*. ¶ 22.)  In response, Petitioner emphasizes that the April 3, 2020, Memorandum "had no firm disqualifiers," unlike the March 26, 2020, Memorandum, which disqualified inmates for sex offenses. (ECF No. 36, at 15.)

The April Memorandum did not, however, replace the March Memorandum, it only generally expanded the class of inmates eligible for consideration, and gave priority to inmates in facilities that were experiencing significant levels of infection. April 3, 2020, Attorney General Memorandum for the Director of the BOP, *available at* https://www.justice.gov/file/1266661/download (last visited January 12, 2023).  If anything, the April Memorandum emphasized the need to protect public safety, particularly from the risk of "prisoners engaging in additional criminal activity . . . including violence or heinous *sex offenses*." *Id*. at 2 (emphasis added).

To the extent Petitioner challenges the BOP's authority to determine which crimes render an inmate ineligible for home confinement, it was within the BOP's discretion to make that determination. *Aigebkaen v. Warden*, No. 20-5732, 2020 WL 6883438, at *5 (D.N.J. Nov. 24, 2020).  The Cares Act does not require the BOP to release any particular class of inmates. "Because Congress has not identified any . . . circumstance in which the Bureau either must grant home confinement or is forbidden to do so," courts must only decide whether the agency empowered to do so "has filled the statutory gap in a way that is reasonable in light of the legislature's . . . design." *Id*.  By their very nature and potential danger to the community, it was

11

reasonable for the BOP to conclude that inmates convicted of sex offenses are ineligible for home confinement.

With respect to Petitioner's PATTERN score of low, Petitioner stresses that a minimum PATTERN score is no longer required to be eligible for home confinement, but that does not change the fact that the BOP *could* have used his PATTERN score of low as a factor against him, at the time of its decision. (ECF No. 36, at 14.)  Nor does Petitioner dispute that he committed two high severity offenses, arguing only that the BOP should have considered that he had an otherwise clean disciplinary record and that he did not commit the offenses until after the onset of the pandemic. (*Id*.)  Petitioner also emphasizes that the disciplinary infractions would not weigh against him if he applied today, as the BOP limits the scope of this factor to offenses within the last twelve months. (*Id*.; ECF No. 6-4, ¶ 18.)  Nothing, however, precluded the BOP from weighing those circumstances against Petitioner at the time of its decision.

Ultimately, Petitioner merely disagrees with the results of his assessment and argues that the BOP should have weighed certain factors differently.  Once again, the "test is not whether a reviewing court would weigh the factors differently," or whether the BOP weighed the factors correctly, but whether the BOP abused its discretion.  *Eccleston*, 390 F. App'x at 65.  This Court concludes that the BOP provided Petitioner with an individualized assessment and denied his request for home confinement based on the memorandums in effect at that time.  The BOP's decision to deny home confinement under three factors in particular was not a fundamental error and did not carry "a serious potential for a miscarriage of justice." *Id*.

As a result, the Court finds that the BOP's decision to deny home confinement under the CARES Act was not an abuse of discretion. *See e.g.*, *Downs v. N'Diaye*, No. 21-7326, 2021 WL 5076412, at *2 (D.N.J. Nov. 2, 2021) (finding no abuse of discretion where petitioner had a

PATTERN score of low and a recent commission of greatest severity disciplinary offense); *Marino v. Howard*, No. 20-1501, 2021 WL 4341113, at *5 (M.D. Pa. Sept. 23, 2021) (finding no abuse of discretion where petitioner had a conviction for a crime of violence); *Grasso v. Bradley*, No. 20-2040, 2021 WL 4318017, at *4 (M.D. Pa. Sept. 23, 2021) (finding no abuse of discretion where petitioner had conviction for crime of violence and a PATTERN score of low); *Aigbekaen*, 2020 WL 6883438, at *5 (finding no abuse of discretion where petitioner had a conviction for a sex offense). Accordingly, the Court will alternatively deny Petitioner's abuse of discretion-based CARES Act claim on the merits.

### C. Eighth Amendment Claim

Next, Petitioner alleges that due to the COVID-19 pandemic, the conditions of his confinement violate his rights under the Eighth Amendment and seeks his immediate release.[5] Respondent argues that this Court lacks jurisdiction under § 2241 because this claim does not fall within the core of habeas, and that in any event, the BOP was not deliberately indifferent to the risks to Petitioner.

Under § 2241(c)(3), "[t]he writ of habeas corpus shall not extend to a prisoner unless . . .. He is in custody in violation of the Constitution or laws or treaties of the United States." In other words, a petitioner must satisfy: "the status requirement that the person be 'in custody,' and the substance requirement that the petition challenge the legality of that custody on the ground that it is 'in violation of the Constitution or laws or treaties of the United States.'" *E.g.*, *Wilson v. Montgomery Cty., Pa.*, No. 09-0371, 2009 WL 1322362, at *4 (D.N.J. May 12, 2009) (quoting 28 U.S.C. § 2241(c)(3)) (citing *Maleng v. Cook*, 490 U.S. 488, 490 (1989)).

---

[5] Petitioner had alternatively sought his release into home confinement, but as discussed above, this Court lacks jurisdiction to order the BOP to place Petitioner under home confinement.

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 [or *Bivens*] action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citation omitted). "[U]nless the claim would fall within the 'core of habeas' and require sooner release if resolved in the plaintiff's favor, a prison confinement action . . . is properly brought under § 1983" or a *Bivens* action. *Leamer*, 288 F.3d at 542. Stated differently, "'when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction,' a civil rights action is the proper method to seek relief." *Chaparro v. Ortiz*, No. 20-5272, 2020 WL 4251479, at *2 (D.N.J. July 24, 2020) (quoting *Leamer*, 288 F.3d at 542).

Typically, § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). "Examples of habeas claims that affect the duration of confinement include parole challenges, loss of good time credits and incorrect sentence calculations." *Wragg v. Ortiz*, 462 F. Supp. 3d 476, 498 (D.N.J. 2020); *see also Chaparro*, 2020 WL 4251479, at *2.

In *Wragg*, after discussing the general differences between habeas and civil rights actions, Judge Bumb observed that the Supreme Court, in *dicta*, left open the possibility of prisoners challenging the conditions of their confinement, in exceptional circumstances, through a habeas petition. *Wragg*, 462 F. Supp. 3d at 498 (citing *Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973)). Until recently, "neither the Supreme Court nor the Third Circuit ha[d] ever recognized any exceptional circumstance that would allow Petitioners to challenge their conditions of confinement in a habeas petition." *See id*. (citing *Muhammad*, 540 U.S. at 751 n.1).

In *Hope v. Warden York Cty. Prison*, however, the Third Circuit "recognized the viability of conditions of confinement claims through a § 2241 petition," under certain circumstances. *Guilherme B.V. v. Tsoukaris*, No. 20-11734, 2020 WL 5525512, at *5 (D.N.J. Sept. 14, 2020) (citing *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 324–25 (3d Cir. 2020)). In that case, the Third Circuit found that *immigration detainees* could challenge the conditions of their confinement under § 2241, due to "the extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic." *Hope*, 972 F.3d at 324–25. In recognizing that claim, the Court cautioned that it was "not creating a garden variety cause of action," but one specific to those exceptional circumstances. *Id*. at 324.

Since *Hope*, many district courts have heeded the Third Circuit's warning and dismissed § 2241 petitions that challenged COVID-19 conditions for lack of jurisdiction. *E.g.*, *Vendetti*, 2022 WL 102250, at *2; *Goodchild*, 2021 WL 3914300, at *15; *see also Smith v. Harper*, No. 22-235, 2022 WL 4097652, at *15 (W.D. Pa. July 19, 2022). Those courts found that the extraordinary circumstances in *Hope* are simply no longer present at this time. *Vendetti*, 2022 WL 102250, at *2; *Goodchild*, 2021 WL 3914300, at *15. The courts reasoned that those prisoners now "have alternatives to the extraordinary remedy of releasing prisoners before expiration of their sentences, based solely on their conditions of confinement." *Goodchild*, 2021 WL 3914300, at *15; *see also Vendetti*, 2022 WL 102250, at *2. For example, they could file a civil rights action and seek injunctive relief to ensure that the BOP complies with any CDC guidelines at issue. *Vendetti*, 2022 WL 102250, at *2. Notably, in his supplemental briefing, Petitioner does not challenge any particular aspect of his *current* conditions, *i.e.*, the state of the prison after the BOP's extensive efforts to combat COVID-19. (*Compare* ECF No. 36, *with* ECF No. 6, at 13–23 (detailing the BOP's extensive efforts to improve its facilities and prevent the spread of COVID-19 at Fort Dix).)

15

Rather, Petitioner summarily concludes that his release is the only viable option to protect him from COVID-19. (ECF No. 36, at 19.)

Additionally, the Court takes judicial notice of the now widespread availability of COVID-19 vaccines, which could very well eliminate the need for habeas corpus relief in this context. *Cf. Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (suggesting that the widespread availability of the COVID-19 vaccines eliminated the need for compassionate release due to the pandemic). "Vaccination greatly reduces the risk of COVID-19 exposure and infection," as well as the severity of infection and risk of death. *United States v. Gonzalez*, No. 96-114-1, 2022 WL 9997471, at *3 (D.N.J. Oct. 17, 2022); *United States v. Martinez*, No. 16-503, 2022 WL 1320618, at *4 (D.N.J. May 2, 2022) ("The likelihood of a COVID-19 infection has also been greatly reduced by vaccination of [the defendant] and others at the prison."). The "BOP has made the vaccine available to all inmates under its supervision[] and has administered over [340,000] doses systemwide." *United States v. Darby*, No. 13-631, 2022 WL 1423089, at *6–7 (D.N.J. May 5, 2022) (citing COVID-19 Vaccine Implementation, *available at* https://www.bop.gov/coronavirus/ (last visited January 13, 2023)).

The BOP has offered Petitioner the COVID-19 vaccine, and he has steadfastly refused the offer. (ECF No. 36, at 9.) Petitioner contends that he is "unable to receive the vaccine." (*Id.*) He alleges that "he had an adverse reaction to a flu vaccine as a child and has refused all vaccines since that time, except the tetanus vaccine, which he did receive as an inmate at Fort Dix in 2019." (*Id.*) Although Petitioner submitted extensive medical records to the Court, Petitioner does not cite to any of his records to support his claim that he is unable to receive *any* of the COVID-19 vaccines. (*Id.*) Petitioner does not explain how he believes that the different types of COVID-19 vaccine are similar to the flu vaccine he received as a child, or why he believes that he would have

16

an adverse reaction to any particular COVID-19 vaccine or ingredient of those vaccines. Nor does Petitioner explain why avoiding a possible "adverse reaction," is preferable to facing, in his estimate, a dire risk of death from COVID-19. (*Id*.)

As the Third Circuit has held, prisoners "who refuse the vaccine without just cause forego a powerful protection against illness; they cannot claim that they are at serious risk while declining a potent tool to reduce that very risk." *E.g.*, *Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022). In other words, although a petitioner is within his rights to refuse treatment, "he cannot simultaneously claim that he must be released because of the risk . . . while refusing a vaccine that could virtually eliminate that risk." *E.g.*, *United States v. Ortiz*, No. 18-264, 2021 WL 1422816, at *4 (E.D. Pa. Apr. 15, 2021); *see also Gonzalez*, 2022 WL 9997471, at *3.

In short, while Petitioner's medical conditions present some risk of re-infection with COVID-19 and developing serious complications, he is refusing the very tool that could eliminate that risk without just cause. Petitioner does not, for example, allege that he has "any particular medical contraindication or religious bar to vaccination." (ECF Nos. 1, 36); *Darby*, 2022 WL 1423089, at *6–7. Courts have routinely rejected claims for release when an inmate refuses the vaccine without just cause. *E.g.*, *Estevez-Ulloa*, 2022 WL 1165771, at *2; *United States v. Thomas*, No. 21-1645, 2022 WL 296594 at *2 (3d Cir. Feb. 1, 2022) (citing cases); *United States v. Ariel L. Jeffers*, No. 08-16, 2023 WL 36158, at *9 (W.D. Pa. Jan. 4, 2023); *United States v. Reddick*, No. 11-293, 2022 WL 16922093, at *3 (D.N.J. Nov. 14, 2022).

Additionally, Petitioner has already contracted COVID-19, which may provide him with some "natural immunity" that can reduce the risk of subsequent infections. *See, e.g.*, *Garrett*, 17 F.4th at 433; *United States v. Savage*, No. 12-617, 2021 WL 1628470, at *2 (E.D. Pa. Apr. 27, 2021) ("[G]iven what is necessarily some degree of natural immunity, and the chance to enhance

17

such immunity dramatically, Mr. Savage cannot credibly claim he remains at substantial risk of serious illness from COVID because of his incarceration.").

To be clear, this Court has not decided the merits of Petitioner's Eighth Amendment claim. Rather, the Court merely finds that the current circumstances in this case do not present "the extraordinary circumstances that existed in March [of] 2020 because of the COVID-19 pandemic," which justified jurisdiction under § 2241 for immigration detainees in *Hope*, 972 F.3d at 324–25. For the reasons above, this Court agrees with *Vendetti* and *Goodchild*, and concludes that it lacks jurisdiction under § 2241 to consider Petitioner's Eighth Amendment conditions of confinement claim. *Vendetti*, 2022 WL 102250, at *2–3; *Goodchild*, 2021 WL 3914300, at *15–16. Accordingly, the Court will dismiss Petitioner's Eighth Amendment conditions of confinement claim for lack of jurisdiction. Finally, to the extent Petitioner raises a separate conditions of confinement claim based on an alleged Legionnaire's outbreak, the Court will dismiss that claim for lack of jurisdiction, for substantially the same reasons.

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Petitioner's request to modify sentence as moot and dismiss the remainder of the Petition for lack of jurisdiction.  The Court will alternatively deny Petitioner's abuse of discretion-based CARES Act claim on the merits.  Finally, the Court will deny the remainder of Petitioner's motions, which are his motions to strike, (ECF Nos. 9, 12, 15), as moot.[6]  The Court thanks appointed counsel for her zealous representation in this matter.  An appropriate Order follows.

Dated:  January 19 , 2023                           s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge

---

[6] Petitioner had sought to strike most of Respondent's evidence and exhibits arguing that "they are outside of the pleadings" and because he did not have an opportunity to review or challenge them. (ECF Nos. 12, 15.)  Petitioner is incorrect.  Upon receiving the evidence, Petitioner had the opportunity to review that evidence and then challenge their veracity by filing a reply and submitting his own evidence as part of his reply. Rules Governing Section 2254 Cases Rule 7(c) (applicable to § 2241 cases through Rule 1(b) of the Rules Governing Section 2254 Cases).

To the extent Petitioner challenges Respondent's evidence as "outside of the pleadings," the Habeas Rules allow the Court to expand the record to include "documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record." Habeas Rule 7(b).  The Court expressly ordered Respondent to file and serve "certified copies of all documents necessary to resolve Petitioner's claims." (ECF No. 4, at 1.)  Accordingly, the Court would have alternatively denied Petitioner's motions to strike on the merits.